Kenneth E. PELLER, Custodian for Arthur David Peller and Kelly Antoinette Peller, Suing derivatively, in the right and for the benefit of The Southern Company and Georgia Power Company,

v.

THE SOUTHERN COMPANY, et al.

No. 1:86–CV–975–RCF.

United States District Court,
N.D. Georgia.

Dec. 23, 1988.

party still desires a conference, they should noti-  fy the court.

Edward T.M. Garland, Robin Loeb Kurtzman, The Garland Firm, Atlanta, Ga., Michael Grant Kohn, Robert B. Matusoff, pro hac vice, Gene Mesh & Associates, Cincinnati, Ohio, for Kenneth E. Peller, et al.

John J. Dalton, Troutman Sanders Lockerman & Ashmore, Atlanta, Ga., for Southern Co., Georgia Power Co.

Robert G. Stachler, pro hac vice, Taft Stettinius & Hollister, Cincinnati, Ohio, for Edward L. Addison, Alan R. Barton, A.W. Dahlberg, Joseph M. Farley, Douglas L. McCrary, Robert W. Scherer, Alvin W. Vogtle, Jr., V.J. Daniels, Jr., H.G. Baker, Jr., J.A. Gantt, Warren Y. Jobe, Richard J. Kelly, George W. Edwards, Jr., and James H. Miller, Jr.

John J. Dalton, Troutman Sanders Lockerman & Ashmore, Atlanta, Ga., William O. Fifield, pro hac vice, Sidley & Austin, Chicago, Ill., for William J. Cabaniss, Jr., Charles H. Chapman, Jr., John W. Langdale, Earl L. McLean, Jr., Robert H. Radcliff, Jr., Crawford Rainwater, William J. Rushton, III, Herbert Stockman, Frank P. Samford, Jr.

Griffin B. Bell, Frank C. Jones, Martin Robert Thornton, Perry Elizabeth Pearce, King & Spalding, John J. Dalton, Troutman Sanders Lockerman & Ashmore, Atlanta, Ga., William O. Fifield, pro hac vice, Sidley & Austin, Chicago, Ill., for William S. Morris, III, William A. Parker, Jr., Gloria M. Shatto, Dr. and L.G. Hardman, III.

Griffin B. Bell, Frank C. Jones, Martin Robert Thornton, Perry Elizabeth Pearce, King & Spalding, Atlanta, Ga., William O. Fifield, pro hac vice, Sidley & Austin, Chicago, Ill, for H.G. Pattillo.

William O. Fifield, pro hac vice, Sidley & Austin, Chicago, Ill, for A.F. Dantzler.

Griffin B. Bell, Frank C. Jones, Martin Robert Thornton, Perry Elizabeth Pearce, King & Spalding, Atlanta, Ga., for W.G. Autrey, Bennett A. Brown, W.A. Fickling, Jr., L.S. Flowers, Robert Strickland, William B. Turner, Carl Ware and T.R. Williams.

## ORDER

RICHARD C. FREEMAN, District Judge.

This action is before the court on defendants' renewed motion to dismiss, or for summary judgment. Plaintiff opposes the motion.

■ Plaintiff is a shareholder of the Southern Company, and in this shareholder derivative action he alleges that defendants, including past and present directors of The Southern Company and its wholly-owned subsidiary Georgia Power Company, breached their fiduciary duties and acted negligently in the supervision and management of the construction of two electric generating plants, the Alvin Vogtle Electric Generating Plant (Plant Vogtle) and the Rocky Mountain Pumped Storage Plant (Rocky Mount Plant). After plaintiff filed his complaint, the Boards of Directors of Southern and Georgia Power (the Boards) adopted resolutions creating an "independent litigation committee" (ILC) to review and to investigate plaintiff's allegations to determine whether they had merit. The court stayed this action pending the issuance of the ILC's report. After the ILC released its report, all defendants moved for dismissal of the complaint based on the report. In an order entered March 25, 1988, this court denied defendants' motion and granted plaintiff limited discovery. *Peller v. The Southern Co.*, [1987–1988 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,714, at 98,312 (N.D.Ga.1988) [1988 WL 90840].[1] In response to the order the ILC

---

[1] The court also found that plaintiff's failure to make a demand upon the Boards prior to instituting suit was excused because it would have been futile. *See Peller* at 98,311. On December 21, 1988 counsel for Georgia Power and Southern wrote a letter to the court urging the court to reconsider its decision that this is a demand-excused case. Counsel relied on *Spiegel v. Buntrock*, No. 8936 (Del.Ch. Nov. 17, 1988) (1988 WL 124324). The court reminds counsel that communications to judges seeking a ruling are to be made by motion not letter. LR 215–2(b),

filed a supplemental report (ILC supplement) and plaintiff and defendants have submitted additional briefs.

In its March 25 order, the court expressed its concern that the ILC had failed to give sufficient consideration to O'Brien–Kreitzberg & Associates (OKA) retrospective audit report (OKA report) filed in the rate case conducted by the Georgia Public Service Commission (PSC).[2] The OKA report, which was accepted by the PSC, found that Georgia Power made certain imprudent decisions in the construction of Plant Vogtle. The court was also concerned that the ILC failed to investigate whether the corporations incurred damage as a result of the alleged mismanagement and whether any award against defendants would be collectible. *See Peller*, at 98,312.

As the court held in the order of March 25, the proper standard of review in this case is found in *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del.1981). The court must first determine whether the ILC was independent, conducted its investigation in good faith, and had a reasonable basis for its conclusion that the action should be dismissed. In making this determination, the court may not rely on any presumption of the ILC's independence, good faith, and reasonableness; rather, the corporation has the burden of proving these elements. If the court finds that the corporation has failed to sustain its burden of proof, the court must deny the motion to dismiss. If, however, the court finds that the ILC was independent, acted in good faith, and had reasonable bases for its conclusions, the court may dismiss the action or in its discretion, proceed to a second step, whereby the court applies its own business judgment to the decision of the ILC. *Id.* at 788–89.

---

NDGa. Although the court believes this case is distinguishable on its face, if counsel believes he has valid and substantial grounds for the court to reconsider a prior ruling, he may file a motion for reconsideration.

2. The rate case was a proceeding through which Georgia Power requested permission of the PSC to recover the costs of construction of Plant Vogtle by including the cost in the rate base. The PSC found that a total of $951,000,000 was

## INDEPENDENCE

■ The ILC consists of three members: William P. Copenhaver, chairman, Vincent J. Whibbs, Sr., and Virginia Dwyer. Copenhaver was elected to the Georgia Power Board in April 1986 and did not participate in any of the actions complained of in the complaint. Whibbs, a director of Gulf Power Co., a wholly-owned subsidiary of Southern, was a member of the Southern Board but did not participate in any of the decisions at issue here. On September 17, 1986, Dwyer, a retired senior vice-president of A.T. & T., was elected to the Boards of both companies for the purpose of being the third member of the ILC. On that same date Southern and Georgia Power cross-elected Copenhaver and Whibbs so that the three members of the ILC would be directors of both corporations.

Plaintiff does not challenge the character or integrity of the ILC's members. Nor does plaintiff contend that the members have any personal disqualifying interests. Rather, plaintiff contends that a "structural bias" exists that taints the decision of the ILC. Structural bias exists because the ILC members have backgrounds and expertise that are similar to that of the defendant directors. Plaintiff asserts that this commonality of experience translates into a sympathetic analysis by the ILC of the defendant directors' decisions.

Only a minority of courts have found structural bias sufficient to taint the independence of ILC members. *See Hasan v. CleveTrust Realty Investors*, 729 F.2d 372, 377 (6th Cir.1984); *Miller v. Register and Tribune Syndicate, Inc.*, 336 N.W.2d 709, 716 (Iowa 1983). The majority view recognizes that independent directors are capable of rendering an unbiased decision even

imprudently incurred in the construction of Plant Vogtle, and, therefore, held that Georgia Power was entitled to a total rate increase of $464,091,000 as opposed to the approximately $805,000,000 sought. Each finding of imprudence was upheld by the Fulton County Superior Court. *See Georgia Power Co. v. Georgia Public Service Commission*, Nos. D–50843, D–50844, D–50866, D–50870 (Ga.Super. July 21, 1988).

though they were appointed by the defendant directors and share a common experience with defendants. *See, e.g., Kaplan v. Wyatt,* 499 A.2d 1184, 1189–90 (Del.1985) ("allegations of natural bias not supported by tangible evidence ... do not demonstrate a lack of independence"); *Zapata,* 430 A.2d at 785; *Auerbach v. Bennett,* 47 N.Y.2d 619, 393 N.E.2d 994, 1001, 419 N.Y. S.2d 920, 927–28 (1979). The court in *Zapata* acknowledged that when directors are appointed by fellow directors to judge the decisions of those same directors, "the question naturally arises whether a 'there but for the grace of God go I' empathy might not play a role." *Zapata,* 430 A.2d at 787. The *Zapata* court, however, compensated for this possibility by establishing a two-part inquiry that does not afford complete deference to the ILC. *See id.* at 787–89.

The court finds the majority view persuasive. If ILCs are to be utilized, the court must accept the likelihood that members of an ILC will have experience akin to that of the defendant directors. Indeed, the appointment of persons with no background in public utilities or corporate management to the ILC would probably be irresponsible. This does not mean, however, that the court is completely comfortable with the composition of the ILC. Two of the members of the ILC sat on the Boards prior to being appointed to the ILC and one of the ILC members previously sat on the board of directors of a wholly-owned subsidiary of Southern. The court does not believe that these factors destroy the independence of the ILC, but they must be considered in reviewing the actions and decisions of the ILC.

### GOOD FAITH

■ The conduct of the ILC in making its evaluation of plaintiff's factual allegations provides the basis for the determination of the good faith of the ILC's investigation. *Kaplan v. Wyatt,* 484 A.2d 501, 519 (Del.Ch.1984), *aff'd,* 499 A.2d 1184 (Del.1985). Therefore, the court must consider what the ILC actually did to investigate.

The ILC received its initial briefing from Troutman, Sanders, Lockerman, & Ashmore, counsel for Southern and Georgia Power. Troutman, Sanders then provided the ILC with a list of suggested counsel. The ILC conducted interviews of potential counsel and then retained Smith, Gambrell & Russell (Smith, Gambrell) as counsel. Smith, Gambrell's role was to provide legal advice and to staff the investigation. Smith, Gambrell prepared a plan for the investigation and conducted approximately 70 interviews of persons with knowledge relevant to the allegations of the complaint. For most interviews, at least one member of the ILC was present. All members of the ILC were present at a few of the interviews and for some, none of the ILC was present. The interviewees were not placed under oath. No recording of the interviews was made. Smith, Gambrell prepared "annotated summaries" of each interview for the ILC. Defendants have not provided these summaries to plaintiff.[3]

Upon the advice of Smith, Gambrell, the ILC retained GDS Associates (GDS) as consultants to assist with technical analysis of the rate case filings. GDS and Smith, Gambrell conducted the majority of the investigation and presented reports to the ILC. GDS assisted Smith, Gambrell in preparing interview questions and GDS prepared a summary of the Project Management Board (PMB) minutes.[4] Additionally, Smith, Gambrell reviewed the evidence presented in the rate case and prepared summaries of certain testimony for the ILC. Smith, Gambrell also prepared summaries of the actions relating to Plant Vogtle taken by the Boards and prepared sum-

---

**3.** Defendants contend that plaintiff never made a written request for the summaries; there is, however, no evidence that defendants would have honored a written request in light of their apparent refusal of an oral request.

**4.** Georgia Power created the PMB to design, construct, and supervise the initial operation of

Plant Vogtle. A Project General Manager was assigned full time to the project and reported to the PMB. The PMB in turn reported to the President and Board of Directors of Georgia Power. Several of the individual defendants sat on the PMB.

maries of documents identified by plaintiff as supporting his claim. Smith, Gambrell prepared drafts of the initial ILC report and following the court's March 25 order, Smith, Gambrell suggested that the ILC issue a supplemental report. The ILC agreed and Smith, Gambrell prepared drafts of that report. With respect to the specific items of concern to the court, defendants concede that only Smith, Gambrell, and not the individual members of the ILC, reviewed the OKA report. Dwyer's and Whibb's deposition testimony reveals that the ILC members did not personally review any insurance policies that might provide coverage in the event defendants were found liable.

The ILC met ten to twelve times prior to the issuance of the initial report. A review of the minutes of the ILC's meetings does not provide significant insight into the substance of the ILC's deliberations.[5] Members of the ILC did suggest eighteen different areas of inquiry at their meeting on December 17, 1986. At the meeting on August 19, 1987, the ILC determined that none of the defendants' actions gave rise to civil liability. At that same meeting the ILC was informed by Smith, Gambrell that at least one more interview was scheduled and that Smith, Gambrell was considering re-interviewing senior management of Georgia Power.

The court finds that the investigation undertaken was thorough. Nonetheless, the court continues to be troubled by the fact that the ILC relied almost exclusively on Smith, Gambrell to conduct the substantive aspects of the investigation. The court acknowledges that an ILC's reliance on counsel is an accepted practice. *See, e.g., Rosengarten v. Buckley,* 613 F.Supp. 1493, 1503 (D.Md.1985); *Abella v. Universal Leaf Tobacco Co.,* 546 F.Supp. 795, 801 (E.D.Va.1982); *Grossman v. Johnson,* 89 F.R.D. 656, 664 (D.Mass.1981), *aff'd,* 674 F.2d 115 (1st Cir.1982), *cert. denied,* 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982).

The conduct of the interviews is a most important factor in determining whether the ILC pursued its charge with diligence and zeal, or whether it played softball with critical players. Plaintiff has not been given an opportunity to review the annotated summaries of interviews prepared by Smith, Gambrell. Thus, by relying on counsel to outline and to conduct all interviews and then prepare interview summaries that contain "privileged information", the ILC has insulated its investigation from scrutiny by plaintiff. This is not good faith.

### REASONABLE BASIS

In an effort to convince the court that it had reasonable bases for its conclusions, the ILC filed a supplemental report that details the ILC's reasons for disagreeing with the OKA report. The ILC believed that OKA's credibility before the PSC had been damaged by evidence of miscalculations by OKA and by a flawed audit report prepared by OKA for the Missouri Public Service Commission. The best evidence of OKA's credibility before the PSC is found in the PSC decision. The ILC, however, made a conscious decision not to consider this evidence by issuing its report prior to the PSC decision, which was due to be filed the next day.[6]

The ILC also determined that the decisions found by OKA to be imprudent were in fact prudent. The individual decisions all relate to technical matters regarding the construction of Plant Vogtle. Smith, Gambrell reviewed the same evidence that the PSC considered in making its findings of imprudence. The ILC, based on Smith, Gambrell's reports, determined that the decisions were prudent. Considering the complexity of the decisions at issue and the conflicting testimony, the court cannot say that it is unreasonable for two entities to derive two different conclusions from the same set of facts. Nevertheless, defendants have not persuaded the court that

---

**5.** The minutes for the ILC's monthly meetings from December 1986 to August 1987 are attached as exhibit 7 to Virginia Dwyer's deposition.

**6.** By statute, the PSC was required to issue its decision by October 2, 1987. The ILC filed its report on October 1, 1987.

the ILC, as opposed to the PSC, arrived at the correct conclusion.

The ILC also found that the problems identified by the PSC were middle management problems for which the Boards had no responsibility as long as middle management was competent. The court agrees that generally a board of directors is not liable for incorrect decisions made by well-informed, competent middle management. In this case, however, several of the defendant directors were also members of the PMB and had management responsibility. The ILC apparently considered the PMB to be senior level management as opposed to middle management. Taking the ILC's view, anonymous middle management made several decisions that were reasonable when made, but that later proved to cost Georgia Power several hundred million dollars. The court does not believe, as defendants and the ILC do, that middle management alone can be responsible for the loss to the company of several hundred million dollars.

Finally, the ILC has failed to assuage the court's concern that it conducted an adequate investigation of damage to the corporations. The ILC concluded, in its initial report, that the question of damage to the corporations depended on "whether the Companies are better or worse off, financially, because of the completion of Plant Vogtle." ILC report at 162–63. The proper assessment of damage is the additional cost incurred on account of imprudent management. The PSC's disallowance of approximately $300,000,000 for inclusion in the rate base certainly constitutes damage to Georgia Power, because Georgia Power, not the ratepayers will have to bear that cost. The ILC knew that the PSC decision was forthcoming and that the PSC might exclude some of the construction costs from the rate base. Yet, the ILC chose not to await and address the PSC decision.

The court notes that defendants, and perhaps the ILC, have treated this case as if it concerned only the decision to *build* Plant Vogtle. Defendants have brought to the court's attention the fact that Georgia Power met all-time high demands for energy during this past summer and that Georgia Power believes it can meet future energy needs for the state because of its foresight in building Plant Vogtle. This case does not primarily address the issue of whether the construction of Plant Vogtle, or any nuclear power plant, was a prudent decision. The decision to build Plant Vogtle and to bring it into operation may have been a most prudent and commendable management decision. Plaintiff, however, is concerned that defendants neglected their fiduciary duties to the corporation in permitting an enormous waste of corporate resources through imprudent management of the construction.

In sum, the court concludes that it is not satisfied that defendants have met their burden of establishing the good faith and reasonableness of the ILC. There exist too many troubling aspects about the manner in which the ILC conducted its investigation. Therefore, the court will deny the motion to dismiss.

Additionally, even if the court were to find that defendants had met their burden, the items enumerated above would be sufficiently troubling so that the court would exercise its discretion and to proceed to the second step of the *Zapata* analysis.

In proceeding to this second step the court must accept the premise that the cause of action alleged on behalf of the corporation is a " 'legitimate' one, i.e., presumably one that states on its face a legally cognizable wrong against the corporation which, once the proof is in, may well result in a judgment in favor of the corporation." *Kaplan*, 484 A.2d at 508. The court must consider, in addition to legal and public policy issues, any ethical, commercial, promotional, public relations, employee relations and fiscal factors that may be involved. *Id.* at 509.

After considering and balancing all these factors the court finds that the motion to dismiss should be denied. This case involves a unique situation because Georgia Power and Southern are not wholly private companies. As regulated utilities, the companies must answer not only to their shareholders but also to the PSC and to the

ratepayers. Thus, the court must be concerned about the fact that the allegations of plaintiff's complaint involve both public and private interests. Additionally, there is no dispute that the PSC determined that Georgia Power mismanaged the construction of Plant Vogtle such that the company will bear the cost, approximately 300 million dollars, of that mismanagement; this finding has been upheld by Fulton County Superior Court. The magnitude of the damage, as well as the numerous instances of mismanagement found by the PSC, convinces the court that this derivative action should go forward.

Accordingly, defendants' motion to dismiss, or alternatively for summary judgment, is DENIED.

SO ORDERED.