**ALLIED READY MIX COMPANY, INC. ex rel. GOBEL MATTINGLY, and American Equipment Company, Inc., ex rel. Gobel Mattingly, Appellants,**

v.

**Harold T. ALLEN, Tom Allen, Steve Allen, Al Schneider, Ed Merkel, Dan Sullivan, Bernie Dahlem, Appellees.**

No. 1997–CA–001132–MR.

Court of Appeals of Kentucky.

Sept. 11, 1998.

Discretionary Review
Denied by Supreme Court June 9, 1999.

Case Ordered Published by
Supreme Court June 9, 1999.

Robert V. Waterman, Louisville, for Appellants.

Philip W. Collier, T. Morgan Ward, Jr., Mark D. Fridy, Louisville, for Appellees Dan Sullivan and Ed Merkel.

Robert E. Stopher, Louisville, for Appellee Al Schneider.

Frank P. Doheny, Jr., Louisville, for Appellee Bernie Dahlem.

No Brief for Appellees Harold Allen, Tom Allen and Steve Allen.

Philip Collier, Louisville, Oral Argument for Appellees.

Before: EMBERTON, GARDNER and SCHRODER, Judges.

## OPINION

GARDNER, Judge.

Gobel Mattingly (Mattingly), shareholder on behalf of Allied Ready Mix Company, Incorporated (Allied) and American Equipment Company, Incorporated (American), has appealed from an order of the Jefferson Circuit Court in this stockholder's derivative action. Mattingly maintains that the circuit court incorrectly found that the actions of litigation committees set up by the corporations were acceptable and that the court erred by finding that Mattingly was not a suitable representative to prosecute this action under Kentucky Revised Statute (KRS) 271B.7–400(1). After reviewing the issues raised by Mattingly and the record below, this Court affirms the circuit court's judgment.

Allied and American are related companies. Allied produces concrete from sand, gravel and cement purchased from various suppliers, while American owns and leases equipment such as trucks to Allied. Each corporation has the same shareholders and directors: Mattingly, Harold Allen (Harold), Bernie Dahlem (Dahlem), Al Schneider (Schneider), Dan Sullivan (Sullivan) and Ed Merkel (Merkel).

Mattingly became suspicious of certain activities involving the corporations and Harold and began his own investigation. On December 19, 1990, Mattingly made a demand upon the other directors of Allied and American (1) to investigate improprieties committed by certain directors and others, (2) to recover sufficient sums to compensate both corporations for that which had allegedly been wrongfully deprived, (3) to cease any alleged and improper actions, and (4) to bring any necessary legal action to accomplish these demands. He generally alleged that Harold had violated his fiduciary duties to the corporations and unjustly enriched himself. He also alleged that Schneider, Merkel, Sullivan and Dahlem had aided and abetted Harold in alleged breaches of fiduciary duty. Mattingly also raised certain claims against Tom and Steve Allen, employees of the corporations and relatives of Harold Allen.

The other directors of the corporations responded to Mattingly in a letter dated January 18, 1991. The letter stated that no improprieties that were not correctable had occurred. The letter addressed each specific count of misconduct or impropriety raised by Mattingly. The letter stated the board did not foreclose further investigation into the allegations but that the information available to them had satisfied their inquiry for the moment.

Mattingly filed a derivative suit in May 1991 raising twelve counts of misconduct or breach of duties. He raised the same allegations that were in his December 1990 demand letter to the corporations' directors. He also included new charges that Harold, Tom and Steve Allen improperly charged personal expenses to Allied and American and that they improperly converted corporate property to their own use and that Harold breached his fiduciary duty with respect to an extension of an option to purchase certain real estate. He claimed that the other directors had aided and abetted Harold in breaching fiduciary duties and breached their duties by refusing to seek recovery of sums for which Allied and American had been wrongfully deprived.

On May 15, 1991, in response to Mattingly's complaint, Allied and American by vote of their board of directors each formed two special litigation committees to investigate the merits of the allegations. The committees included Schneider, Dahlem, Merkel and Sullivan.[1] All four committees had authority to bind the corporations. The committees hired independent legal counsel to investigate the matters. Specifically, they hired Charles Sandmann and the firm of Conliffe, Sandmann and Sullivan to advise them. The committees also engaged Jerry Hurt (Hurt), a certified public accountant, to investigate the alleged matters. Hurt investigated various transactions involving Harold as well as Modern and sampled various months over a twelve year period. Accounting fees were $18,000 for the investigation while attorneys spent over 1,100 hours, and fees exceed $129,000. Counsel recommended to the committees that they prosecute approximately $100,000 in claims against the Allens and that another $130,000 was in a "gray area." The committees decided to seek recovery of the additional amount. A 123 page final report was issued by the committees, and the report recommended recovering $229,821.02 in claims. The committees submitted their final report to the boards in April 1993. The boards adopted the committees' recommendations.

Following adoption of the committees' report by the boards and a motion by the corporations to dismiss Mattingly's complaint, the circuit court considered the entire matter. The court after conducting a lengthy hearing regarding the committees' report and Mattingly's allegations, issued its findings of fact, conclusions of law and order in September 1996. The court found that Mattingly's initial demand upon the corporations' boards in December 1990 was adequate and had been rejected by the boards in the January 1991 letter. The court applied a test set forth in *Spiegel v. Buntrock*, 571 A.2d 767 (Del.1990), to

Mattingly's charges two through nine since they had been brought to the boards and refused. Under this test, the court concluded that the committees' investigation of these claims was conducted in a reasonable manner and in good faith. The court found that demands by Mattingly under charges ten through twelve were excused because of futility, and applied a more stringent test. The court concluded that the committees acted independently, reasonably and in good faith regarding these matters, and it concurred with their findings as a matter of sound business judgment. The corporations asked the circuit court to give control of the derivative action to them. The circuit court placed control of the derivative claims against the Allens with Allied's and American's boards of directors. The court concluded that Mattingly would not be a suitable representative to prosecute this action pursuant to KRS 271B.7–400. The court later dismissed Mattingly's individual claims against Merkel, Sullivan, Dahlem and Schneider. Mattingly has appealed from the court's opinion and order.

Mattingly first argues that the circuit court applied the incorrect standard of review in assessing the actions of the special litigation committees. He maintains that the court should have applied the standard of review set out in *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del.1981), rather than the test from *Spiegel v. Buntrock*, *supra*. As part of his argument, he also contends that good policy dictates that the independence of the committees should always be examined and that the circuit court's holding that the committees were independent is unsupported by the evidence and clearly erroneous. This Court has carefully reviewed the applicable law regarding litigation committees and the circuit court's opinion, and has concluded that the court below correctly applied the law to the facts of this case.

---

1. Mattingly raised charges about the corporations' involvement with Modern Concrete Company (Modern). Merkel and Sullivan were appointed to the committees investigating this matter, because the other board members had interests with Modern.

KRS 271B.8–010 directs that each corporation shall have a board of directors and that all corporate powers shall be exercised by or under the authority of and the business affairs of the corporation managed under the direction of its board of directors. KRS 271B.7–400 addresses derivative agreements and provides,

(1) A person shall not commence a proceeding in the right of a domestic or foreign corporation unless he was a shareholder of the corporation when the transaction complained of occurred or unless he became a shareholder through transfer by operation of law from one who was a shareholder at that time. The derivative proceeding shall not be maintained if it appears that the person commencing the proceeding does not fairly and adequately represent the interests of the shareholders in enforcing the right of the corporation.

(2) A complaint in a proceeding brought in the right of a corporation shall be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why he did not make the demand. Whether or not a demand for action was made, if the corporation commences an investigation of the charges made in the demand or complaint, the court may stay any proceeding until the investigation is completed.

The parties to this appeal agree that there is no Kentucky caselaw addressing the standard of review to apply to a corporate committee's decision regarding a derivative suit after a demand has been made. *Spiegel v. Buntrock, supra; Zapata Corp. v. Maldonado, supra,* and other Delaware cases are the leading cases in this subject area and have been followed by other courts. This Court finds them persuasive in the case at bar.

Directors rather than shareholders manage the business and affairs of a corporation. *Spiegel v. Buntrock,* 571 A.2d at 772–73. A decision whether to bring a lawsuit or refrain from litigation on behalf of a corporation is a decision concerning the management of a corporation. *Id.,* at 773. Such decisions are part of the responsibility of a board of directors. *Id.* Courts in many states have held that a board of directors may legally delegate its authority regarding whether to commence or terminate a lawsuit to special litigation committees made up of disinterested directors. *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 111 S.Ct. 1711, 1719, 114 L.Ed.2d 152 (1991); *Zapata Corp. v. Maldonado,* 430 A.2d at 786; *Houle v. Low,* 407 Mass. 810, 556 N.E.2d 51, 57 (1990). *See also Abbey v. Computer & Communications Technology Corp.,* 457 A.2d 368 (Del.Ch.1983). An independent and unbiased committee can weigh and balance the diverse factors in a given case and make a business judgment regarding the proper cause of action. *Houle v. Low,* 556 N.E.2d at 57.

A shareholder may file a derivative action to redress an alleged harm to the corporation. *Spiegel v. Buntrock,* 571 A.2d at 773. In most cases, the shareholder must first make demand upon the directors to obtain the desired action or plead with particularity why the demand was excused. *Id.* Since a conscious decision by a board of directors to refrain from acting may be a valid exercise of business judgment, where a demand on a board has been made and refused, courts apply the business judgment rule in reviewing the board's refusal to act pursuant to a shareholder's demand to file a lawsuit. *Id.,* at 773–74, quoting *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984). "The business judgment rule is a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.,* at 774. The party challenging the board's decision bears the burden to establish facts rebutting this presumption. *Id.* Where a shareholder makes

a demand which is refused, the board's decision is subject to judicial review according to the traditional business judgment rule. *Id.*, at 775–76. *See also Kamen v. Kemper Financial Services, Inc.*, 111 S.Ct. at 1719. By electing to make a demand, a plaintiff shareholder tacitly concedes the independence of a majority of the board to respond. *Spiegel v. Buntrock*, 571 A.2d at 777. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of the board's investigation. *Id.* Absent an abuse of discretion, if the requirements of the traditional business judgment rule are met, the board's decision not to pursue the derivative claim will be respected by a reviewing court. *Id.* The same standard of review applies when a board delegates authority to respond to a special litigation committee. *Id.*, at 778. *See Houle v. Low*, 556 N.E.2d at 57.

 In cases where no demand has been made to a board by the shareholder, because of futility or other reason, the reviewing court first inquires into the independence and good faith of the board or investigating committee as well as the reasonableness. *Zapata Corp. v. Maldonado*, 430 A.2d at 788. *See also Aronson v. Lewis*, 473 A.2d at 813. A corporation must prove the independence of its investigation. *Zapata Corp. v. Maldonado*, 430 A.2d at 788. A court would then apply its own independent business judgment in considering the board's decision. *Id.See also Kamen v. Kemper Financial Services, Inc.*, 111 S.Ct. at 1719.

 In the case at bar, Mattingly made a demand regarding some of the grounds in his complaint upon the boards of Allied and American. The demand was refused. Thus, the test from *Spiegel v. Buntrock, supra*, applies rather than the test in *Zapata Corp. v. Maldonado, supra*, to those claims. The facts of *Abbey v. Computer & Communications Technology Corp., supra; Peller v. Southern Co.*, 911 F.2d 1532 (11 th Cir.1990), and other cases cited by Mattingly are distinguishable.

The circuit court applied the *Spiegel* test for counts two through nine. The court's finding of good faith and reasonableness on the part of the special litigation committees is supported by evidence presented in the record and is not clearly erroneous. *See Reichle v. Reichle*, Ky., 719 S.W.2d 442 (1986). Further, the circuit court correctly applied the test from *Zapata* which includes independence to charges ten through twelve, because demand was excused based upon futility. The court found independence of the committees as to all claims even though it was not required as to two through nine. Again, this finding was supported by the evidence. Directors did not serve on committees investigating entities in which they had a direct interest. The board hired independent counsel to investigate and assist the committees. Counsel expended over 1,100 hours investigating Mattingly's charges at a cost exceeding $129,000. The board also hired accountants who investigated the specific complaints and sampled transactions going back twelve years. Accounting fees exceeded $18,000. The committees sought to recover $130,000 from the Allens in addition to the $100,000 that the independent counsel recommended was clearly recoverable. To hire more counsel for each committee as Mattingly suggests would have inflated the investigatory costs, and he has made no showing that this was necessary or would lead to further recovery. Further, Mattingly's claims that the accountant's methods were suspect are simply not supported by the record. The record overall supports the trial court's findings of good faith, reasonableness and independence on the part of the special litigation committees. We decline to disturb its findings.

Mattingly also contends that even if the committees were independent and conducted their investigation in good faith and in a reasonable manner, the circuit court should have applied the second step from *Zapata Corp. v. Maldonado, supra*, and appointed Mattingly to handle the

suit. The test from *Zapata* would apply to charges ten through twelve only since demand had been made on the others. The court here did seem to apply the considerations set out in *Zapata* and concluded the committees and the boards had acted correctly and that the corporations, not Mattingly, should maintain the suit. The circuit court properly acted within its discretion in reaching that decision.

Next, Mattingly alleges that the circuit court erred by not making the requisite finding that the members of the special litigation committees were disinterested. We have reviewed the court's opinion, and the language clearly shows that the court found that the committees' members were disinterested. The circuit court's finding once again was not clearly erroneous. An effort was made by the corporations' boards to keep the directors from serving on the committees investigating entities such as Modern Concrete with which they had a direct interest. Mattingly has raised general concerns about Schneider and Dahlem, but he has not proven that they were not disinterested.

We next consider Mattingly's argument that the circuit court improperly held that he was not a suitable representative to prosecute this action pursuant to KRS 271B.7-400(1). Once again, the court's conclusion was supported by evidence in the record. Mattingly stated during his deposition that he would have the auditor review every financial record from the very beginning of the corporation that was available. He said that he would not place any cost controls or budgets on the investigation of the litigation. Based upon such evidence, it was not clearly erroneous for the court to conclude that Mattingly was not a suitable representative.

Finally, Mattingly argues that the circuit court prematurely dismissed the claims against the individual directors. He had maintained in his complaint that they were individually liable in breach of their fiduciary duty for their refusal to seek recovery on the claims he set forth. He contended that the directors' failure to seek such recovery constituted aiding and abetting and made them jointly and severally liable for damages to the corporation. He also argues that the directors have made no effort to prosecute the claims.

First, the circuit court found that the investigation by the special litigation committees had been conducted properly and that the directors and boards had upheld their duties even though some of Mattingly's claims were at first refused. The court found that they had satisfied the business judgment rule. Thus, the circuit court correctly dismissed the claims against them for this reason. Second, the claim by Mattingly that no action had yet been filed is premature. This Court is currently being asked to address the question of whether the circuit court erred by deciding that the corporations, rather than Mattingly, were the proper parties to bring the suit. Further, under KRS 271B.7-400(3), a proceeding commenced pursuant to the statute may not be discontinued or settled without the court's approval. If the corporations fail to bring the suit in a timely manner, Mattingly may later have a claim.

For the foregoing reasons, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.