OPINION OF THE COURT
Barry A. Cozier, J.
Plaintiffs move for an order compelling the Special Litigation Committee of the W. R. Grace & Co. Board of Directors (the SLC) to produce witness outlines, notes and summaries of interviews conducted by the SLC and its counsel, which interviews form the basis of the SLC’s pending motion to dismiss the amended complaint.
BACKGROUND
In this derivative action, plaintiffs, individual and institutional shareholders of W. R. Grace & Co. (Grace),[1] assert two causes of action for breach of fiduciary duty against the defendant directors in their amended complaint. The allegations arise out of three separate, but purportedly related, incidents. The first incident involves the payments and perquisites made to former Grace CEO, J. Peter Grace, Jr. (Grace Jr.) beyond that required by his employment agreement, and the efforts of the Board to avoid public disclosure of the terms of those payments. The second incident relates to an alleged misappropriation of Grace funds by J. P. Grace, III (Grace III), in connection with his operation of a Grace subsidiary. The third incident involves J. P. Bolduc, Grace Jr.’s successor as CEO, who resigned after allegations of his sexual harassment of several employees were apparently substantiated by Judge Harold Tyler, the special investigator appointed by the Board. It is alleged that Bolduc received a substantial and unjustified severance package. The defendants include Bolduc, Grace III, the estate of Grace Jr. and the members of the Board at the time of the incidents.
*118 Creation of the Special Litigation Committee
On May 9, 1997, the Board created the SLC to investigate the allegations in the amended complaint. Specifically, the SLC was charged with determining whether continued pursuit of this lawsuit was in the best interests of Grace.[2] The Board resolution appointing the SLC accorded the committee full authority to deal with this lawsuit without any further reference to the Board. The SLC retained the firm of Cravath, Swaine & Moore (Cravath) to act as its counsel. The SLC conducted its investigation by reviewing documents and conducting interviews of defendants and other personnel concerning the matters raised in the complaint. The committee relied heavily on its counsel in its investigation. Indeed, counsel conducted 10 of the 14 interviews and then reported back to the SLC about the substance of the interviews.
The Pending Motions
By notice of motion dated March 2, 1998, the SLC moved to dismiss the action on the ground that it had determined that it was not in the best interests of Grace for this action to be prosecuted. The motion was supported by the affidavits of Akers, Murphy and Keith R Hummel, a member of Cravath. Thereafter, the motion was supported by the 227-page Revised Report of the Investigation, dated May 18, 1998 (Revised Report), with its supporting appendices.
After service of defendants’ motion to dismiss, plaintiffs directed certain discovery requests to the SLC. Plaintiffs requested copies of any transcripts of witness interviews conducted by SLC and its counsel. In the absence of such transcripts, plaintiffs requested notes and summaries of those interviews. Plaintiffs also sought the production of any witness outlines or lists of questions prepared in advance of the interviews. The SLC informed plaintiffs that there were no transcripts made of the interviews. In addition, the SLC refused to produce the notes, summaries and witness outlines which it admitted did exist. Plaintiffs also served deposition notices on Akers, Murphy and Hummel, which have been adjourned until after the disposition of plaintiffs’ present motion to compel.
*119 Plaintiffs now move to compel production of the notes, summaries and witness outlines of the interviews, whether conducted by SLC members or its counsel. Plaintiffs contend that under Delaware law, which both parties agree governs in this action, in ruling on defendants’ motion to dismiss, this court must determine if the SLC’s decision was a valid exercise of business judgment under Zapata Corp. v Maldonado (430 A2d 779 [Del Sup Ct 1981]). In this regard, plaintiffs challenge the validity of the SLC’s investigation and resulting decision not to prosecute this action, on grounds of lack of independence, good faith and reasonableness. However, in asserting such a challenge, plaintiffs contend they must have access to the documents withheld by the SLC, i.e., notes, summaries and witness outlines. They argue that the witness notes, summaries, and outlines are especially critical to plaintiffs’ claim because they form the basis for the Revised Report and corresponding motion to dismiss.
Consequently, plaintiffs claim that they are entitled to examine the witness materials to enable them to challenge whether the SLC discharged its duties with diligence and zeal or whether it “played softball with critical players.” (Peller v Southern Co., 707 F Supp 525, 529 [ND Ga 1988], affd 911 F2d 1532 [11th Cir 1990].) Further, plaintiffs support their request for the witness materials with the assertion that there are factual disputes and that examination of the notes, outlines and summaries will shed light on the SLC’s resolution of the relevant issues.
In addition, plaintiffs contest the SLC’s reliance on its counsel, and whether the participation of SLC members in the interview process was perfunctory or otherwise deficient. Plaintiffs argue that in the event that the court does not compel disclosure, they will be unfairly restricted in their cross-examinations at the depositions of the SLC members and its counsel.
The SLC opposes plaintiffs’ motion to compel on three grounds. First, it contends that the discovery plaintiffs seek exceeds the scope of the limited discovery envisioned in the Zapata case (supra). The SLC argues that plaintiffs are pursuing impermissible discovery on the merits of the derivative action. Second, the SLC argues that plaintiffs have received more than sufficient discovery, both from the SLC and from other sources, to enable them to challenge the SLC’s investigative process. Finally, the SLC contends that the materials plaintiffs seek are protected from discovery by the attorney-client privilege and/or the work product doctrine.
*120 DISCUSSION
As the parties acknowledge, this action is governed by Delaware law, the place of incorporation. Similarly, the parties properly invoke the two-step inquiry pronounced in Zapata Corp. v Maldonado (supra) be applied by this court in determining the SLC’s pending motion to dismiss the action. Under Zapata, the court first must assess the independence and good faith of the committee, and the basis of its conclusion. (Supra, at 788-789.) To aid in this inquiry, the court has discretion to permit limited discovery. (Supra.) If the court concludes that the committee lacked independence, failed to demonstrate good faith and a reasonable basis for its conclusions or, if the court is otherwise dissatisfied with the process used by the committee, it must deny the SLC’s motion. However, if the court is satisfied with the committee’s independence, good faith, and the reasonableness of its decision, the court, in its discretion, may proceed to the second step. In the second phase, a court must apply its own independent business judgment to decide whether the motion to dismiss should be granted. (Supra.) “ ‘The second step is intended to thwart instances where corporate actions meet the criteria of step one, but the result does not appear to satisfy its spirit, or where corporate actions would simply prematurely terminate a stockholder grievance deserving of further consideration in the corporation’s interest.’” (Kaplan v Wyatt, 484 A2d 501, 506 [Del Ch 1984], affd 499 A2d 1184 [Del Sup Ct 1985].) The burden is upon the movant to prove the independence of the special litigation committee, and that it conducted a reasonable investigation of the matters alleged in the complaint in good faith. (Supra, at 507.) The committee does not enjoy any presumption of independence, good faith or reasonableness. (Supra.)
The court, in the exercise of its discretion, may permit the parties to engage in limited discovery to assist the court in its inquiry regarding the good faith and independence of the committee as well as the bases supporting the committee’s conclusions. The “limited discovery” requested by a plaintiff “takes on particular significance since that which he gets — which in all probability will be something less than all he wants — will constitute the framework on which he must defend the motion initiated by the Special Litigation [Committee] to have his derivative suit dismissed.” (Kaplan v Wyatt, supra, 484 A2d, at 511.)
In this case, the court finds that the production of the notes, summaries and outlines regarding the committee’s interviews *121 of witnesses is necessary and. will facilitate determination of the reasonableness and good faith of the SLC’s investigation. Contrary to the SLC’s contentions, plaintiffs’ requests do not constitute all-encompassing merits discovery. In order for plaintiffs to reasonably challenge the thoroughness of the SLC’s factual investigation, they must be able to examine the questions posed and the subjects explored in the witness interviews. Similarly, it is impossible for the court to assess whether the SLC pursued its charge with diligence and zeal, if the court is unable to review the development of the factual record that underlies the Revised Report.
Under circumstances similar to those in this case, the court, applying Delaware law, specifically ordered production of notes and minutes taken by the Independent Litigation Committee (ILC) during interviews. (Peller v Southern Co., 1988 WL 90840, 3-4 [ND Ga, Mar. 25, 1988, Freeman, J.] [Peller I\.) The court in Peller I found that such discovery was appropriately limited in accordance with the rule in Zapata (supra), and was necessary in order to enable plaintiff to challenge the thoroughness of the ILC’s investigation. In Peller I, as in the present case, the ILC relied almost exclusively on its counsel to conduct the substantive aspects of its investigation. (See, Peller I, supra, at 3-4; see also, Peller v Southern Co., 707 F Supp 525, 529 [ND Ga 1988], supra [Peller II).) While acknowledging that reliance on counsel was an accepted practice, the court, nevertheless, noted that it was troubled by the fact that the ILC relied almost exclusively on counsel to conduct the substantive aspects of the investigation. It stressed that the conduct of the interviews was an important factor in evaluating the zeal and diligence with which the ILC pursued its duties. (Peller I, supra, at 3-4.) The court in Peller I further remarked that the ILC was insulating its investigation from scrutiny by the plaintiff by not transcribing the interviews and by having counsel prepare interview summaries that contain “privileged information”. (Supra.) While not finding that the ILC proceeded in bad faith, the court reiterated its concern over this practice in its later decision which denied the ILC’s motion to dismiss. (See, Peller II, supra, at 529; see also, Peller v Southern Co., supra, 911 F2d, at 1538, n 6.)
As in Peller I (supra), the SLC in the instant case relied heavily on counsel who conducted 10 of the 14 interviews which formed the factual basis for its Revised Report. Likewise, the witness interviews were not transcribed. The only written record of the interviews are counsel’s notes, outlines and sum *122 maries. To deny plaintiffs the opportunity to discover the questions asked of the key witnesses, and whether the responses thereto were used or ignored by the SLC in forming its conclusions and preparing its report, would impermissibly allow the SLC to insulate its investigation from scrutiny by simply using counsel to conduct the interviews. Like the Peller court, this court is troubled by the issue of whether the SLC acted in good faith when it preserved the interview testimony in such a way that it could then protect it from examination by asserting privilege. .
When assessing the good faith and reasonableness of the SLC’s investigation, the court must also determine whether the committee’s reliance on counsel was in good faith. (See, Carlton Invs. v TLC Beatrice Intl. Holdings, 1997 WL 305829, 10-11 [Del Ch, May 30, 1997, Allen, J.].) To successfully challenge the committee’s good-faith reliance on counsel, plaintiffs must show overreaching by counsel or neglect by the SLC. (Supra.) If counsel incompetently conducted the interviews, the SLC’s reliance and good faith would be called into question. (See, Katell v Morgan Stanley Group, 1995 WL 376952, 8-10 [Del Ch, June 15, 1995, Chandler, J.].)
The court recognizes that some of the documents sought may contain privileged matter which may be immune from discovery, notwithstanding their relevance to issues of good faith and the reasonableness of the investigation. Thus, an in camera review is the appropriate procedural vehicle to ensure that those privileges are not violated, while permitting plaintiffs to obtain the discovery necessary to challenge the SLC’s good faith. However, the court notes that the application of the attorney-client privilege is problematic. The SLC’s counsel represents both the SLC and the corporation as a whole (e.g., the plaintiff shareholders). Under such circumstances, the attorney-client privilege would not bar discovery of all communications between counsel and the SLC. (See, Zirn v VLI Corp., 621 A2d 773, 781-782 [Del Sup Ct 1993] [privilege is not absolute; if legal advice relates to a matter which becomes the subject of a suit by shareholders against the corporation, privilege may be restricted or denied]; see also, Riggs Natl. Bank v Zimmer, 355 A2d 709 [Del Ch 1976] [trustee may not bar discovery of legal memorandum of counsel from beneficiaries because the memorandum was prepared for the benefit of trust beneficiaries, the client].)
The work product doctrine protects materials specifically written in preparation for threatened or anticipated litigation. *123 (Zirn v VLI Corp., supra, at 782.) Again, even if the SLC’s materials qualify for work product protection, they may still be discoverable if the shareholder seeking such discovery from the corporation can demonstrate “good cause”. (Garner v Wolfinbarger, 430 F2d 1093, 1103-1104 [5th Cir 1970], cert denied sub nom. Garner v First Am. Life Ins. Co., 401 US 974 [1971]; see, Zirn v VLI Corp., supra.) Among the factors which make out the requisite showing of “good cause” are (i) the number of shareholders and the percentage of stock they represent; (ii) the bona fides of the shareholders; (iii) whether the shareholders’ claim is obviously colorable; (iv) the necessity or desirability of the information and its availability from other sources; (v) whether the communication related to past or prospective actions; (vi) whether the communication concerns advice regarding the litigation itself; (vii) the extent to which the shareholders are blindly fishing; (viii) and the risk of revelation of trade secrets or other confidential information.
In this case, plaintiffs have shown that there are many shareholder interests at stake, including the interests of one of the corporation’s largest shareholders, the California Public Employees Retirement System. In addition, plaintiffs have demonstrated that the discovery they seek is not available from other sources since the interviews were not recorded. Plaintiffs have also established that the communications do not necessarily disclose counsel’s advice to the SLC regarding this litigation. However, before ordering production of the requested documents, the court will review the documents in camera. (See, Tackett v State Farm Fire & Cas. Ins. Co., 653 A2d 254, 263 [Del Sup Ct 1995].) The in camera review will protect against disclosure of the mental impressions, conclusions, opinions or legal theories of SLC’s counsel. (Zirn v VLI Corp., supra, at 783.)
The SLC’s reliance on Carlton Invs. v TLC Beatrice Intl. Holdings (1997 WL 38130 [Del Ch, Jan. 29, 1997, Allen, J.]) in arguing that the attorney-client privilege and the work product doctrine bar discovery of all of the documents plaintiffs seek, is misplaced. In Carlton Invs., while the court did not permit plaintiffs to depose the committee’s counsel regarding the assistance and advice provided to the committee, it explicitly stated that it was not ruling upon the issues of attorney-client or work product privileges. (Supra.) The plaintiffs in Carlton Invs. were permitted to obtain disclosure of deposition transcripts regarding the litigation committee’s investigation of the plaintiffs’ derivative claims. (See, Carlton Invs. v TLC *124 Beatrice Intl. Holdings, 1997 WL 305829, supra.) Further, while the court did not require the production of notes of interviews, it did state that such notes would be helpful in probing the specific grounds the committee relied upon for its decisions and probative in the court’s assessment of the reasonableness and good faith of the committee’s proposed settlement of the derivative action. (See, Carlton Invs. v TLC Beatrice Intl. Holdings, 1997 WL 208962, 3 [Del Ch, Apr. 21, 1997, Allen, J.].)
The reasoning of the court in the Carlton Invs. cases (supra) is particularly compelling in the case at bar where the SLC’s notes, outlines and summaries of witness interviews provide the only means by which to make an assessment of the reasonableness and good faith of the SLC’s investigation, to the extent that the information is otherwise unavailable.
Accordingly, it is ordered that the motion to compel is held in abeyance pending the court’s in camera review, and it is further ordered that the SLC shall submit the subject documents to the court within 15 days of service of a copy of this decision with notice of entry.

. At the commencement of this action, Grace was a New York corporation. In January 1996, it reincorporated under Delaware law. The parties agree that Delaware law is controlling with regard to derivative actions.

. The SLC was composed of John F. Akers, former CEO and Chairman of the Board of IBM, and John J. Murphy, former CEO and Chairman of the Board of Dresser Industries, Inc. Akers and Murphy were named as directors to the Grace Board of Directors after all of the events at issue and after the filing of the complaint in this action.