2010 UT App 260

Dana BREWSTER, Plaintiff
and Appellee,

v.

D. Steven BREWSTER; Gary B. Brewster;
Millcreek Coffee Airport, LLC; and
Millcreek Coffee Roasters Corp., Defendants and Appellants.

No. 20090368–CA.

Court of Appeals of Utah.

Sept. 23, 2010.

F. Kevin Bond and Budge W. Call, Salt Lake City, for Appellants.

Gerry B. Holman, Salt Lake City, for Appellee.

Before Judges McHUGH, VOROS, and ROTH.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Defendants D. Steven Brewster (Steven), Gary B. Brewster (Gary), and Millcreek Coffee Airport, LLC (the Airport LLC) seek interlocutory review of the trial court's denial of Millcreek Coffee Roasters Corporation's (Roasters) motion to dismiss the derivative action brought by Plaintiff Dana Brewster (Dana). We reverse.

## BACKGROUND

¶ 2 Roasters was formed in 1996 by Steven and Dana Brewster, who were married at the time. Roasters' primary business includes coffee roasting and importing, as well as retail and wholesale coffee sales. Steven and Dana divorced shortly after forming the corporation, but continued their business rela-

tionship as equal shareholders in Roasters.[1] Since the parties' divorce, Steven has been solely responsible for managing Roasters.

¶ 3 In the fall of 2005, Host International (Host) approached Steven about an opportunity to open two retail outlets at the Salt Lake City Airport. Because Host would either select or reject Roasters' proposal within thirty days, "time was of the essence" in determining whether to proceed. Steven calculated "that $200,000 operating capital would be required to fund the venture" and informed Dana of the opportunity, including the funding requirements. Steven proposed that they each contribute $100,000 toward the funding, which would result in Steven and Dana each owning fifty percent of the new stores. After asking "for a 'business plan' and additional information," Dana agreed to contribute her share.

¶ 4 To protect Roasters' assets, Steven formed the Airport LLC as a separate legal entity that would manage the new stores. Steven subsequently contributed $100,000 to the Airport LLC, but Dana did not contribute her share. Consequently, Steven used $100,000 from Roasters' cash reserves to fund the remaining amount needed to launch the Airport LLC, with Roasters receiving fifty percent ownership of the Airport LLC in return and Steven owning the other fifty percent.[2]

¶ 5 Both parties agree that at the time Roasters entered into the agreement with Host, the corporation did not have sufficient cash reserves to fund the full $200,000. However, after the Airport LLC realized significant profits, Dana asserted that Roasters should have fully funded the Airport LLC, either by obtaining a loan or by using savings from Roasters' other operations. On October 31, 2006, Dana brought a derivative suit against Steven; Gary, a director; the Airport LLC; and Roasters; alleging that Steven "usurped a corporate opportunity by retain-

ing 50% of the [A]irport [LLC] for his own personal benefit as opposed to allowing Roasters to own the entire ... opportunity."

¶ 6 The trial court appointed counsel for Roasters and, pursuant to the relevant section of the Revised Business Corporation Act (the RBCA), *see* Utah Code Ann. § 16–10a–740(4) (2009), counsel retained an accountant, Brad Townsend,[3] as an "independent person[ ]" to determine whether it would be in Roasters' best interests to maintain the derivative suit, *see id.* § 16–10a–740(4)(a), (f). Steven and Dana stipulated to Townsend's being appointed to conduct this inquiry and agreed to waive any objections to his appointment. Specifically, Roasters' counsel asked Townsend to address six issues, including whether it would be in Roasters' best interests to maintain the derivative suit.

¶ 7 On July 7, 2008, after he and his staff spent approximately eighty hours meeting with the parties and reviewing Roasters', Steven's, and Dana's files, Townsend submitted his findings to Roasters' counsel in a report (the Report). The Report indicated that Townsend had verified the accuracy of statements made by Steven and Dana, found no improprieties in Roasters' records, and concluded that Roasters could not have funded the entire $200,000 for the Airport LLC without taking out a loan or altering the shareholders' distributions, which would have required deviating from the business principles and practices that Roasters generally followed.

¶ 8 Regarding Roasters' counsel's question whether it would be in the corporation's best interests to dismiss the derivative suit, the Report stated that "[t]he answer to this question is complex and appears to be more a question of fact than of expert opinion," and that the "allegations and causes of action" contained in the complaint "are far beyond the scope of [the] financial and accounting analyses" that Townsend was retained to

---

1. Initially, Steven and Dana were the sole shareholders in Roasters, but in January 2006, Steven and Dana gave six percent ownership of Roasters to their children, with each parent contributing three percent. As a result, Steven and Dana each owned forty-seven percent of Roasters when this lawsuit was filed.

2. Because, at that time, Steven also owned one half of Roasters, he directly or indirectly owned seventy-five percent of the Airport LLC, with Dana owning the remaining twenty-five percent.

3. Townsend is both a certified public accountant and a forensic accountant.

perform. Nevertheless, the Report listed nine factors that, according to Townsend, "should be considered" in determining whether to dismiss the suit: (1) the profitability of the Airport LLC; (2) the increased profits Roasters received as a result of selling products to the Airport LLC; (3) Dana's apparent inability to fund her share of the Airport LLC and Roasters' inability to fund the Airport LLC fully without incurring additional debt; (4) the sound business practices of operating Roasters debt-free and using different entities to develop new business opportunities; (5) the fact that the decision to have Roasters fund one-half of the Airport LLC was "within the realm of reasonable business judgment," even though "there may have been other options available" for funding; (6) the potential cost of litigation; (7) the fact that Roasters was not damaged by funding the Airport LLC but instead profited from doing so; (8) Steven and Dana's unwillingness to personally guarantee a loan for the balance of the investment, which would have been required; and (9) the fact that the profits received by Steven and Roasters were proportional to the risk that each assumed in funding the Airport LLC.

¶ 9 After receiving the Report, Dana provided Townsend with additional information regarding her finances and suggested alternative ways that, in hindsight, Roasters might have fully funded the Airport LLC. In an affidavit filed with the trial court on October 9, 2008 (the First Affidavit), Townsend stated that the additional information and suggestions provided by Dana did not change Townsend's conclusion that Roasters "did not have the ability to independently fund" the Airport LLC. Townsend further stated that it was his "understanding that the derivative claims center around the usurpation of a corporate opportunity from Roast-

ers to one of its principals," and that a corporate opportunity cannot be usurped where the corporation is unable to fund the project. Based on that fact and the factors listed in the Report, Townsend concluded "that from an accounting and financial perspective[,] the maintenance of the derivative [suit] is not in the best interest of [Roasters]"[4] because "any harm that may have occurred would have occurred on a personal level and not to the corporation."

¶ 10 In conjunction with the First Affidavit filed on October 9, 2008, Roasters also filed a motion to dismiss the derivative claims pursuant to the RBCA, *see* Utah Code Ann. § 16–10a–740(4)(a) (stating that the trial court shall dismiss a derivative proceeding where a designated person "determines in good faith after conducting a reasonable inquiry" that it would be in a corporation's best interests to dismiss the suit). At the hearing on Roasters' motion, the trial court indicated that it had questions regarding how Townsend arrived at his conclusions. Therefore, the trial court scheduled an evidentiary hearing to allow Townsend to testify regarding the conclusions contained in the Report and the First Affidavit.

¶ 11 During that hearing, Townsend responded negatively to the trial court's inquiry into whether he had considered, in his analysis of whether the corporation could have provided all of the funding for the Airport LLC without incurring debt, the possibility of factoring Roasters' accounts receivables.[5] Townsend also clarified that his research of Roasters' business practices extended back to 2002, rather than to 1996 when Roasters was formed. In addition, Dana's counsel referred the trial court to portions of Townsend's deposition, which was taken after the First Affidavit, in which

---

4. Townsend later explained that he did not state his conclusion in the Report because he viewed the process as having a "fact finding segment[]" and an opinion from the facts segment," with the Report detailing his "forensic fact finding" and the First Affidavit containing the "conclusion [he] dr[e]w from those facts." Townsend elaborated further, stating that the Report was his attempt to "address[] the entire question of whether the derivative action should be retained with regard to all the legal and factual issues," while the First Affidavit was his attempt to an-

swer the more specific question, posed by Roasters' counsel, of whether, "from a financial and accounting standpoint," the derivative action should be maintained.

5. Factoring is the sale of a business's accounts receivable at a discounted price that reflects the buyer's assumption of the risk that the business's customers will not pay their accounts in full. *See* Black's Law Dictionary 671 (9th ed. 2009).

counsel proposed that Roasters might have completely funded the Airport LLC using the $100,000 in cash reserves and the initial profits earned by the new stores. Townsend acknowledged that, in hindsight, that type of financing might have been "possible," given the demonstrated profitability of the Airport LLC, but that it would take him another ten hours of analysis to determine whether it would have been feasible at the time Steven and Roasters funded the Airport LLC. Despite these points, Townsend continued to assert that dismissal of the derivative suit was in Roasters' best interests.

¶ 12 Ten days later, in response to Roasters' request that Townsend research the issues raised at the evidentiary hearing, Townsend submitted a second affidavit (the Second Affidavit). Townsend stated in the Second Affidavit that any decision to factor the accounts receivables would not be "sound business judgment" because of the high discount rate associated with doing so, and because, even with the money generated from factoring the receivables, payment of the entire $200,000 would have "created very tight financial demands and likely would have jeopardized Roasters' ability to meet ongoing operational cash flow needs and/or shareholder distributions." Townsend noted that the $100,000 cash on hand at the time of the airport opportunity in 2006 had taken Roasters over ten years to accumulate. The Second Affidavit also reported Townsend's expanded examination of Roasters' borrowing practices to include the years between 1996 and 2002, which confirmed his earlier conclusion that Roasters "has never gone into debt to fund a new business opportunity or for any other reason." Finally, Townsend concluded that his further investigation and consideration supported his previous conclusions that Steven exercised sound business judg-

ment in funding half of the investment in the Airport LLC outside the corporation and that it was not in Roasters' best interests to maintain the derivative action.

¶ 13 On April 16, 2009, the trial court nevertheless denied Roasters' motion to dismiss the derivative action. In doing so, the trial court explained that, although Townsend had conducted his inquiry in good faith, it "ha[d] questions concerning the reasonableness of Mr. Townsend's inquiry, as to whether the Corporation did all it could do to fund the Airport project." We granted Roasters' petition for interlocutory review to determine whether the trial court properly denied the motion to dismiss.[6]

## ISSUE AND STANDARDS OF REVIEW

■ ¶ 14 Defendants assert that under the RBCA, the trial court was required to grant the motion where, following a reasonable inquiry, Townsend concluded that it was in Roasters' best interests to dismiss the derivative claims. We review the trial court's interpretation of the RBCA for correctness, *see State Farm Mut. Auto. Ins. Co. v. Green,* 2003 UT 48, ¶ 44, 89 P.3d 97 ("A matter of statutory interpretation is a question of law that we review on appeal for correctness."), but because the determination of what constitutes a reasonable inquiry under the RBCA depends on the facts and circumstances of the particular case, *see Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1002–03 (1979), we review the trial court's determination regarding the reasonableness of the inquiry under an abuse of discretion standard, *see generally State v. Levin,* 2006 UT 50, ¶ 24, 144 P.3d 1096 ("Discretion is broadest—and the standard of review is most deferential—when the application of a legal concept is highly fact dependant and variable.").[7]

---

**6.** Section 16–10a–740 of the RBCA expressly provides that "[a] person may appeal from an interlocutory order of a court that grants or denies a motion to dismiss brought pursuant to Subsection (4)(a)." *See* Utah Code Ann. § 16–10a–740(4)(g) (2009).

**7.** Citing cases from other jurisdictions, the parties disagree as to what standard of review applies. Defendants argue that we review for cor-

rectness both the trial court's interpretation of the statute and its denial of the motion to dismiss. *See, e.g., Janssen v. Best & Flanagan,* 662 N.W.2d 876, 881 (Minn.2003) (reviewing a trial court's denial of a motion to dismiss a derivative suit under a de novo standard because it involved matters of statutory interpretation). In contrast, Dana argues that the correctness standard applies only to the interpretation of the statute, while the denial of the motion to dismiss is

## ANALYSIS

¶ 15 We begin our analysis by determining whether, as Defendants argue, the RBCA requires a trial court to dismiss a derivative suit where an appointed expert concludes that dismissal would be in the best interests of the corporation. We then examine whether the trial court was required to dismiss Dana's derivative action under the facts present here.

I. A Trial Court Must Dismiss a Derivative Claim if an Independent Person Acting in Good Faith Concludes, Based upon a Reasonable Inquiry, that Maintaining the Derivative Action Is Not in the Best Interests of the Corporation.

 ¶ 16 "In undertaking statutory construction, 'we look first to the plain language of a statute to determine its meaning. Only when there is ambiguity do we look further.'" *MacFarlane v. Utah State Tax Comm'n*, 2006 UT 25, ¶ 12, 134 P.3d 1116 (alteration in original) (quoting *J. Pochynok Co. v. Smedsrud*, 2005 UT 39, ¶ 15, 116 P.3d 353). We "assume[ ] that the terms of a statute are used advisedly and should be given an interpretation and application which is in accord with their usually accepted meanings." *Board of Educ. of Granite Sch. Dist. v. Salt Lake Cnty.*, 659 P.2d 1030, 1035 (Utah 1983).

¶ 17 The RBCA, as set forth in Utah Code section 16–10a–740(4)(a), states as follows:

A derivative proceeding shall be dismissed by the court on motion by the corporation if a person or group specified in Subsections (4)(b) or (4)(f) determines in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation.

Utah Code Ann. § 16–10a–740(4)(a) (2009).[8] The RBCA further states that, upon such a motion by the corporation, discovery

(i) shall be limited to facts relating to:

(A) Whether the person [designated under subsection (4)(f) ] is disinterested;

(B) the good faith of the inquiry and review by the person . . . ; and

(C) the reasonableness of the procedures followed by the person . . . in conducting [the] review; and

(ii) may not extend to any facts or substantive matters with respect to the act, omission, or other matter that is the subject matter of the derivative proceeding.

*Id.* § 16–10a–740(3)(e).

 ¶ 18 We agree with Defendants that the plain language of the RBCA prohibited the trial court from inquiring into the reasonableness of Townsend's recommendations. We also agree that the trial court was required to dismiss the derivative suit if, based on a reasonable investigation in good faith, Townsend concluded that maintaining the derivative action would not be in Roasters' best interests. The RBCA expressly states that "[a] derivative proceeding *shall* be dismissed" under these circumstances. *Id.* § 16–10a–740(4)(a) (emphasis added). The term "shall" is generally "presumed mandatory" and has "a usually accepted mandatory connotation" that requires strict compliance with the other statutory terms. *See Board of Educ.*, 659 P.2d at 1035; *see also Barnard v. Mansell*, 2009 UT App 298, ¶ 7, 221 P.3d 874 (stating that "shall" is a "mandatory word"). Thus, the legislature's use of "shall"

---

reviewed for an abuse of discretion. *See, e.g.*, *Peller v. Southern Co.*, 911 F.2d 1532, 1536 (11th Cir.1990) ("We review the district court's denial of the motion for dismissal pursuant to Rule 23.1 [of the Federal Rules of Civil Procedure] for abuse of discretion."). Although not addressed in the context of a derivative suit, Utah authority holds that we review a trial court's statutory interpretation for correctness, *see State Farm Mut. Auto. Ins. Co. v. Green*, 2003 UT 48, ¶ 44, 89 P.3d 97, but in fact-dependent cases such as this, we review the trial court's application of the law to the facts for an abuse of discretion, *see State v. Levin*, 2006 UT 50, ¶ 24, 144 P.3d 1096. We see

no reason to deviate from that standard of review here.

8. Subsection (4)(f) states that "a panel of one or more independent persons" may be appointed "upon motion by the corporation to make a determination whether the maintenance of the derivative proceeding is in the best interests of the corporation." Utah Code Ann. § 16–10a–740(4)(f). There is no dispute that Townsend's appointment was made pursuant to subsection (4)(f).

plainly indicates that a trial court must dismiss a derivative suit under the conditions set forth in the statute.

¶ 19 Indeed, the conditions into which the trial court could properly inquire are expressly limited under the RBCA to whether Townsend was independent, acted "in good faith," and based his conclusions upon a "reasonable inquiry." *See* Utah Code Ann. § 16-10a-740(4)(a); *see also id.* § 16-10a-740(3)(e)(i) (limiting discovery to questions concerning the independence of the person conducting the review, "the good faith of the inquiry and review," and "the reasonableness of the procedures followed . . . in conducting [the] review"). Therefore, we conclude that once a trial court has determined that an independent person appointed pursuant to subsection (4)(f) has conducted a reasonable inquiry in good faith, and has concluded that a derivative action is not in the best interests of the corporation, the RBCA requires the trial court to grant the corporation's motion to dismiss the derivative suit.[9]

¶ 20 Notwithstanding the plain language of the RBCA, Dana argues that the trial court is not required to "simply rubber stamp the recommendation[s]" of the appointed person without inquiry and, therefore, may examine the reasonableness of the appointed person's conclusions. In support of her position, Dana first cites Utah Code section 16-10a-740(5)(a), which states that "[a] derivative proceeding may not be *discontinued* or *settled* without the court's approval." *Id.* § 16-10a-740(5)(a) (emphases added). However, that section applies only where the parties settle their claims or the plaintiff seeks to terminate the proceeding. *See generally* Model Bus. Corp. Act § 7.45 cmt. (2008) (stating that requiring court approval for settlements and discontinuances is "a natural consequence of the proposition that a derivative suit is brought for the benefit of all shareholders," and prevents "the individual shareholder[ ] from settling privately with the defendants"); Black's Law Dictionary 532 (9th ed. 2009) (defining "discontinuance" as "[t]he termination of a lawsuit by the plaintiff," or "a voluntary dismissal or non-suit").[10]

¶ 21 Furthermore, our conclusion does not result in the lack of review implied by Dana's "rubber stamp" reference. The RBCA permits a trial court to examine the reasonableness of the inquiry and the independence and good faith of the person conducting it. *See* Utah Code Ann. § 16-10a-740(4)(a). Once

---

9. Our conclusion is consistent with the views expressed by commentators in this field, *see* Model Bus. Corp. Act § 7.44 cmt. 2 (2008) (stating that a statute identical to Utah's "does not authorize the [trial] court to review the reasonableness of the determination," but does allow inquiry into the reasonableness of the investigation and whether the person acted in good faith); William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 6019.50 (perm. ed. rev. vol. 2004 & 2009–2010 Supp.) ("[T]he substantive aspects of the . . . decision [are] not subject to judicial inquiry, but the . . . appropriateness and sufficiency of the investigative techniques used . . . are proper subjects of review."), and with the interpretations of similar statutes by the courts of other states, *see Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1002–03 (1979) (limiting the court's inquiry to "the adequacy and appropriateness of the committee's investigative procedures and methodologies"); *Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, LLP,* 247 S.W.3d 765, 777–78 (Tex.Ct.App.2008) (limiting judicial review to the independence of the appointed person and the reasonableness and good faith of the inquiry).

10. Dana also cites *Batur v. Signature Properties of Northwest Florida, Inc.,* 903 So.2d 985 (Fla.Dist.

Ct.App.2005), in support of her position. Even if authority from another jurisdiction were relevant to our analysis where the Utah statute is plain, this decision is not persuasive. The *Batur* court expressly acknowledged the Florida statute's use of the term "may dismiss," which the court concluded "gives [Florida] courts more discretion" to review the recommendations than the "shall dismiss" language contained in statutes like Utah's. *See id.* at 992 n. 14. Moreover, the *Batur* court identified the proper subject of the trial court's exercise of its discretion as "disputed issues of bias, conflict of interest, objectivity and reasonableness in the preparation and presentation of the report . . . of the investigation." *Id.* at 995. The other cases relied on by Dana are similarly unhelpful because they do not involve the interpretation of statutes similar to the RBCA. *See Zapata Corp. v. Maldonado,* 430 A.2d 779, 785, 788 n. 17 (Del.1981) (noting the difference between the Delaware approach and that of other states); *Weiser v. Grace,* 179 Misc.2d 116, 683 N.Y.S.2d 781, 784 & n. 1 (N.Y.Sup.Ct.1998) (applying Delaware law); *see also* Model Bus. Corp. Act § 7.44 cmt. 2 (noting the differences between Delaware law and statutes similar to Utah's).

those concerns are satisfied, the RBCA defers to the appointed person to decide, based on that reasonable inquiry, whether the derivative action is in the best interests of the corporation. Indeed, "courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments." *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1000 (1979). Thus, the RBCA limits the trial court's authority to deny a motion to dismiss that is supported by the opinion of the appointed person to those situations in which the person is not independent, has not acted in good faith, or has not reached its conclusions based upon an adequate investigation.

## II. The Trial Court Erred in Denying Roasters' Motion to Dismiss Dana's Derivative Action.

¶ 22 We now apply our interpretation of the RBCA to the facts of this case to determine whether the trial court erred in denying Defendants' motion to dismiss Dana's derivative action. The trial court's written decision states that it denied the motion due to "questions concerning the reasonableness of Mr. Townsend's inquiry, as to whether [Roasters] did all it could to fund the Airport [LLC]." In announcing its oral ruling denying the motion, the trial court elaborated its concern about the procedures followed by Townsend in reviewing Roasters' business practices back to 2002 only, rather than to 1996, the year the corporation was formed. The trial court also questioned Townsend's failure to consider the possibility of factoring its accounts receivable, as well as his failure to speak with more than one bank to ascertain whether, and on what terms, Roasters could have obtained a loan. In response to those concerns, Townsend did additional work, including a review of all Roasters' records from the corporation's formation forward. The Second Affidavit reported the additional review, explained why factoring Roasters' accounts receivable would have been contrary to sound business judgment, and concluded that Roasters' longstanding business policies would have precluded it from incurring debt to finance a new and, as yet, untried venture. Relying on all data available, Townsend again concluded that maintaining the deriva-

tive action was not in Roasters' best interests. Thus, the trial court's articulated concerns had been addressed by the time it entered its written order denying the motion to dismiss. Nevertheless, the trial court denied the motion without identifying any unaddressed issues pertinent to "the reasonableness of the procedures followed" by Townsend "in conducting [his] review," *see* Utah Code Ann. § 16–10a–740(3)(e)(i)(C) (2009).

¶ 23 Although the trial court attributes its denial of the motion to its "questions concerning the reasonableness of Mr. Townsend's inquiry," its decision contains the underlying assumption that Roasters was required "to do all it could to fund the Airport LLC." Corporations may engage in numerous creative financing schemes. However, it is beyond the scope of the review permitted under the RBCA for the trial court to require that such unconventional funding as, for example, the factoring of accounts receivable, be employed in a particular case. The trial court found that Townsend was independent and that he acted in good faith. Thus, the only remaining question was whether Townsend based his conclusions upon a reasonable inquiry. *See generally Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1003 (stating that an investigation is only unreasonable if it "so restricted in scope, so shallow in execution, or otherwise so pro forma or halfhearted as to constitute a pretext or sham"). What the trial court could not do was allow its disagreement with the substance of Townsend's conclusions to undermine its confidence in his investigative procedures. *See id.,* 419 N.Y.S.2d 920, 393 N.E.2d at 1002 ("While the court may properly inquire as to the adequacy and appropriateness of the committee's investigative procedures and methodologies, it may not under the guise of consideration of such factors trespass in the domain of business judgment."). Our review of the record convinces us that the trial court has inadvertently done that here, thereby exceeding its discretion.

¶ 24 The trial court's order assumes that Roasters had to do everything it could to fund the entire $200,000 required for the

Airport LLC, including engaging in unusual or unconventional financing efforts or incurring debt. Yet Townsend had reached the contrary conclusion that good business practice as historically exhibited by the corporation prevented it from fully funding the project. Townsend explained that a conventional loan would risk Roasters' financial stability by linking it with the new venture; that less conventional cash generation schemes were too costly; and that Roasters did not accumulate excess cash quickly, as evidenced by its having accumulated the $100,000 on hand over the course of ten years of operations. In practical effect, Townsend concluded that Roasters had historically made conservative financial decisions that had served the corporation well and that, at the time the Airport LLC had to be funded, there was no good business reason to deviate from those practices. The trial court's denial of the motion to dismiss was based on its disagreement with Townsend's conclusions, including that Roasters would not have borrowed the funds or engaged in risky or costly efforts to fund the Airport LLC, and was not based upon the procedures Townsend followed in conducting his review.[11] Thus, the trial court erred in denying the motion.

### CONCLUSION

¶ 25 Where the trial found that Townsend acted in good faith and was independent, the RBCA unambiguously required it to grant Roasters' motion to dismiss the derivative action in response to a motion supported by Townsend's conclusion, based upon reasonable inquiry, that maintenance of the derivative action was not in Roasters' best interests. The trial court failed to identify any unaddressed deficiencies with respect to the reasonableness of the procedures followed by Townsend in conducting his review, and instead rejected Townsend's conclusions based on its own notions of what business practices should have been employed to fund the Airport LLC. By doing so, the trial court exceeded the scope of the limited review per-

mitted under the RBCA. We reverse the trial court's decision denying the motion to dismiss.

¶ 26 Reversed.

¶ 27 WE CONCUR: J. FREDERIC VOROS JR. and STEPHEN L. ROTH, Judges.

---

11. Indeed, Dana implicitly concedes as much on appeal by arguing, not that the motion was denied because the inquiry was not reasonable, but

rather, that it was denied because the RBCA permits some limited review of Townsend's conclusions.